IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TAMESHIA "TAMMY" KARDAR, | : : : | Civil Action File No. |
| Plaintiff, | : : : | |
| vs. | : : : | Jury Trial Demanded |
| ATLANTA EDUCATIONAL TELECOMMUNICATIONS COLLABORATIVE, INC. d/b/a PUBLIC BROADCASTING ATLANTA, | : : : : : | |
| Defendant | | |

## COMPLAINT

Plaintiff Tameshia Kardar ("Kardar"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 7, brings this Complaint against Defendant Atlanta Educational Telecommunications Collaborative, Inc. d/b/a Public Broadcasting Atlanta ("PBA") and shows the Court as follows:

1. **INTRODUCTION**

1.

This is an FLSA case. Plaintiff brings this action because Defendant PBA misclassified her position as exempt from the overtime pay provisions of the FLSA and, therefore, failed to pay her the overtime that she earned.

2. **JURISDICTION AND VENUE**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b), 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because PBA is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

3. **THE PARTIES**

4.

Kardar resides in Fulton County, Georgia.

5.

At all times material hereto, Kardar was an "employee" of PBA as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

6.

PBA is a non-profit corporation organized in the State of Georgia.

7.

At all times material hereto, PBA has been an "employer" of Kardar as defined in FLSA § 3(d), 29 U.S.C. §203(d).

8.

PBA is subject to the personal jurisdiction of this Court.

9.

PBA may be served with process through its registered agent Kevin Ross, 2255 Cumberland Parkway, Building 700, Suite B, Atlanta, Georgia 30339.

4. **JURISDICTION**

10.

During the relevant time period, two or more employees of PBA, including Kardar, used the following instrumentalities of commerce in the performance of its commercial purposes: U.S. Mail, interstate phone service, interstate computer networks, interstate traveling systems and interstate banking services that included transactions across state lines.

11.

During the relevant time period, two or more employees of PBA, including Kardar, used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: computers, paper, office furniture, broadcasting equipment, gasoline, vehicles, and office supplies.

12.

From on or about November 2012 until June 2015 ("the relevant time period"), Kardar was "engaged in commerce" as an employee of PBA as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

13.

During 2012, PBA had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

14.

During 2013, PBA had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

15.

During 2014, PBA had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

16.

During 2015, PBA had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

17.

During 2012, PBA had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

18.

During 2012, PBA had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

19.

During 2013, PBA had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

20.

During 2014, PBA had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

21.

During 2015, PBA had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

22.

During 2012, PBA had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

23.

During 2013, PBA had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

24.

During 2014, PBA had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

During 2015, PBA had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

From on or about November 2012 until June 2015, PBA has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

27.

From on or about November 2012 until June 2015, PBA was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

5. **FACTUAL ALLEGATIONS**

28.

PBA employed Kardar as an Executive Assistant to the President in Atlanta, Georgia from January 2004 until October 12, 2015.

29.

At all times material hereto, PBA compensated Kardar on an hourly basis.

30.

At all times material hereto, PBA did not compensate Kardar on a salaried basis.

31.

When PBA first hired Kardar in or about January 2004, she was paid overtime for all hours worked over 40 during each work week.

32.

In approximately 2006, PBA stopped paying Kardar for all hours she worked over 40 during each work week.

33.

From in or about 2006 through June 2015, PBA failed to pay Kardar for any hours she worked over 40 during each work week.

34.

In or about July 2015, PBA began again compensating Kardar for hours she worked over 40 during each work week.

35.

Kardar's primary duties did not materially change from the time of her hire through her last date of employment with PBA on October 12, 2015.

36.

At all times relevant from November 2012 through June 2015, Kardar did not perform managerial or executive tasks.

37.

Kardar did not exercise supervisory control over any other employees during the relevant time period.

38.

Kardar did not exercise discretion with respect to any significant business decisions during the relevant time period.

39.

Kardar's primary duty during the relevant time period was to act as personal assistant to the President.

40.

During the relevant time period, Kardar's duties included running errands, maintaining the President's calendar, ordering catering for meetings and other events, taking minutes for quarterly executive committee meetings, event planning and secretarial duties.

41.

During the relevant time period, Defendant frequently contacted Kardar outside of her regular scheduled working hours by email, text and phone to assign and/or discuss work related assignments.

42.

During the relevant time period, Defendant required Kardar to forward her calls to her cellular phone each night.

43.

During the relevant time period and with Defendant's actual or constructive knowledge, Kardar's duties regularly required that she forego her usual lunch period.

44.

During the relevant time period, Kardar was required to work additional hours in excess of her regularly scheduled working hours for special events, board meetings and executive committee meetings.

45.

During the relevant time period, Kardar frequently worked more than her regularly-scheduled hours.

46.

During the relevant time period, PBA was aware that Kardar frequently worked more than her regularly-scheduled hours.

47.

At all times material hereto, Kardar was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

48.

At all times material hereto, PBA did not employ Kardar in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

49.

At all times material hereto, PBA did not employ Kardar in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

50.

At all times material hereto, PBA did not employ Kardar in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

51.

PBA misclassified Kardar as exempt from the overtime requirements of the FLSA during the Relevant Time Period.

52.

PBA failed to pay Kardar for any work she performed in excess of forty (40) hours in each work week during the relevant time period from November 2012 through June 2015.

## COUNT I — FAILURE TO PAY OVERTIME

53.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

54.

At all times material hereto, Kardar was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

55.

During her employment with PBA, Kardar regularly worked in excess of forty (40) hours each week.

56.

PBA failed to pay Kardar at one and one half times her regular rate for work in excess of forty (40) hours in any week from November 2012 through June 2015.

57.

PBA willfully failed to pay Kardar at one and one half times her regular rate for work in excess of forty (40) hours in any week from November 2012 through June 2015.

58.

Kardar is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

59.

As a result of the underpayment of overtime compensation as alleged above, Kardar is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

60.

As a result of the underpayment of overtime compensation as alleged above, Kardar is entitled to her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully prays:

1. That Plaintiff's claims be tried before a jury;

2. That Plaintiff be awarded an amount to be determined at trial against Defendants in unpaid overtime compensation due under the FLSA, plus an additional like amount in liquidated damages;

3. That Plaintiff be awarded costs of litigation, including her reasonable attorneys' fees from Defendant; and

4. For such other and further relief as the Court deems just and proper.

...
...

Respectfully submitted,

|  |  |
|---|---|
| | *DELONG CALDWELL BRIDGERS* |
| 3100 CENTENNIAL TOWER | *FITZPATRICK & BENJAMIN, LLC* |
| 101 MARIETTA STREET | |
| ATLANTA, GEORGIA 30303 | */s/ MICHAEL A. CALDWELL* |
| (404) 979-3171 | MICHAEL A. CALDWELL |
| (404) 979-3170 (f) | GA. BAR NO. 102775 |
| michaelcaldwell@dcbflegal.com | |
| charlesbridgers@dcbflegal.com | |
| woodydelong@dcbflegal.com | */s/ CHARLES R. BRIDGERS* |
| | CHARLES R. BRIDGERS |
| | GA. BAR NO. 080791 |
| | |
| | */s/ EARNEST H. DELONG* |
| | EARNEST H. DELONG |
| | GA. BAR NO. 217300 |
| | |
| | COUNSEL FOR PLAINTIFF |